IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | | |
|---|---|---|
| **JENNIFER W. PLUNKETT,** | ) | |
| | ) | |
| **Plaintiff,** | ) | Civil Action No.: 6:14-cv-28 |
| | ) | |
| v. | ) | |
| | ) | |
| **CROSSROADS OF LYNCHBURG, INC.,** | ) | By: Hon. Robert S. Ballou |
| and | ) | United States Magistrate Judge |
| **MERCEDES-BENZ USA, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |

# MEMORANDUM OPINION[1]

In this slip and fall personal injury case, I deny, in part, the motion to dismiss filed by Defendant Mercedes-Benz USA, LLC ("MBUSA"). I find that Plaintiff, Jennifer W. Plunkett ("Plunkett"), has alleged sufficient facts to state a cause of action against MBUSA for negligence in the selection of certain floor paint used at the Mercedes dealership operated by co-defendant Crossroads of Lynchburg, Inc. ("Crossroads"). However, I grant the motion to dismiss as it relates to any claim that Crossroads was the agent of MBUSA, causing MBUSA to be liable for the negligent acts of Crossroads.

# FACTUAL BACKGROUND

Plunkett alleges that she visited Crossroads to have her vehicle serviced on March 21, 2012, and that as she walked across the service area she slipped on a wet floor causing her to suffer injuries to her hip, wrist and spine. Plunkett maintains that the floor in the service area is painted with a high-gloss paint, making it difficult to detect when liquid substances are on the floor and also making the floor extremely slippery when wet. Plunkett contends that MBUSA

---
[1] This case is before the court on consent jurisdiction pursuant to 28 U.S.C. § 636(c).

1

required Crossroads to use the high-gloss floor paint as part of MBUSA's mandated design of the Crossroads dealership.

Plunkett alleges in her complaint that MBUSA had a duty not to mandate a retail dealership design and/or display that was inherently hazardous to the customers and/or invitees of Crossroads. Specifically, Plunkett asserts that MBUSA was negligent by: 1) requiring that Crossroads use a high-gloss floor paint in the service area which made it difficult to see liquid on the floor; 2) failing to prevent an unreasonable risk of harm to invitees and the general public; 3) failing to adequately warn its invitees of the dangerous condition presented by the high-gloss paint, although MBUSA knew, or the in exercise of reasonable care shown have known, that the dangerous condition existed; 4) failing to correct the dangerous condition of the floor despite the fact that MBUSA, its agents and employees, knew or should have known that invitees had previously fallen due to the difficulty of detecting liquid on the high-gloss floor; and 5) failing to take the appropriate efforts to protect its invitees and the general public from the dangers presented by a wet, high-gloss walkway. Compl. at ¶ 8.

MBUSA moved to dismiss the complaint, asserting that Plunkett failed to state facts sufficient to establish that it owed any duties to the invitees of Crossroads; that it is not responsible for the maintenance of the dealership, including removing liquid from the floor; and that Plunkett failed to allege facts sufficient to establish that the floor paint was unreasonably dangerous.

## I. STANDARD OF REVIEW

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a cause of action may be dismissed for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). The court must accept as true any factual allegations contained in the complaint, and
2

draw all reasonable inferences in Plunkett's favor, though it need not accept legal conclusions. To survive a motion to dismiss, a complaint must provide sufficient facts that, if accepted as true, "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)); see also Erickson v. Pardus, 550 U.S. 89, 94 (2007). Facial "plausibility" lies on a spectrum between possibility and probability, and it is established when the court is able to draw a reasonable inference that the defendant may be liable for the conduct alleged. Id. The complaint need not include detailed factual allegations, but the factual allegations must be more than a formulaic recitation of the elements of a cause of action and must raise a plausible right to relief above the speculative level. Id. "[Additionally], the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. The complaint must contain sufficient facts from which the court, calling upon "its judicial experience and common sense," can conclude that the pleader has shown that he is entitled to relief. Id. at 679; Fed. R. Civ. P. 8(a).

## II. ANALYSIS

### A. Duty of Care

To state a cause of action for negligence in Virginia, a plaintiff must prove the existence of a legal duty of care, a breach of that duty, and that such breach was the cause of the injury suffered. King v. Island Creek Coal Co., 339 F. Supp. 2d 735, 741 (W.D. Va. 2004). Whether a duty of care exists in a negligence action is a pure question of law. Fox v. Custis, 236 Va. 69, 74 (Va. 1988). The crux of MBUSA's motion to dismiss is whether Plunkett has sufficiently pled a claim that MBUSA is vicariously liable for the negligent acts of its franchisee, Crossroads; or

3

alternatively, that that MBUSA negligently breached an independent duty of care it owed to Plunkett.

   1. **<u>Vicarious Liability</u>**

Virginia courts recognize that a franchisor may be vicariously liable to a third party for personal injury upon proof that an agency relationship exists between the franchisor and franchisee. To establish such vicarious liability a plaintiff must show that the franchisor exercised control over the franchisee's operations beyond the standardization of the business identity and uniformity of the commercial service. Rather, a plaintiff must show that the franchisor exercised some control over the daily operations of the franchisee's business. <u>See</u> <u>JTH Tax, Inc. v. H & R Block E. Tax Servs., Inc.</u>, 128 F. Supp. 2d 926, 950 (E.D. Va. 2001) <u>aff'd in part, vacated in part, remanded,</u> 28 Fed. Appx. 207 (4th Cir. 2002); <u>Hayward v. Holiday Inns, Inc.</u>, 459 F. Supp. 634, 635–36 (E.D. Va. 1978); <u>Murphy v. Holiday Inns, Inc.</u>, 216 Va. 490, 495 (Va. 1975); <u>Hackley v. Teague Enterprises, Inc.</u>, 16 Va. Cir. 392 (Va. Cir. Ct. 1989). Here, Plunkett does not assert that MBUSA and Crossroads have an agency relationship,[2] nor does she assert that MBUSA retained any control over Crossroads' day-to-day operations such that it was responsible for the maintenance and upkeep of the floor where Plunkett slipped and fell. Thus, Plunkett's complaint does not sufficiently state a negligence claim against MBUSA for vicarious liability premised on an agency theory.

The motion to dismiss is **GRANTED** as to Plunkett's claim that MBUSA is liable for the actions of Crossroads under an agency theory, and as to any assertion that MBUSA had a duty to

---

[2] The complaint simply alleges that MBUSA and Crossroads have a contractual relationship, which is insufficient to establish an agency relationship. <u>See</u> <u>Prof'l Communications, Inc. v. Contract Freighters, Inc.</u>, 171 F. Supp. 2d 546, 551 (D. Md. 2001). Likewise, the breach of a duty assumed by contract is an insufficient basis to state a cause of action for negligence. <u>See</u> <u>Richmond Metro. Auth. v. McDevitt Street Bovis, Inc.</u>, 256 Va. 553, 558 (1998).

4

maintain Crossroads' premises, including removal of water from the floor or warning of a particular foreign substance (i.e. water) on the floor.

### 2. Direct Liability

Plunkett also contends that MBUSA breached a duty of care it owed independent of the actions of Crossroads. Specifically, Plunkett asserts that MBUSA negligently required Crossroads, as its franchisee, to use a particular floor paint which it knew became extremely slippery when wet and made it difficult to detect water on the floor, creating a dangerous condition at the dealership. Plunkett further asserts that MBUSA is liable to her directly for its independent acts of negligence, because MBUSA had control over the specific design feature in the service area of the Crossroads dealership that caused Plunkett's injury—the use of high-gloss floor paint.

No Virginia case addresses whether a franchisor owes a duty directly to a business invitee regarding the required design or construction of a franchisee's retail space. However, several courts outside of Virginia have recognized the potential liability a franchisor may have for injury on the franchisee's premises when the franchisor controlled the particular instrumentality or design feature that caused the plaintiff's injury. See Allen v. Choice Hotels, International, Inc., 276 Fed. Appx. 339, 342 (4th Cir. 2008); Hoffnagle v. McDonald's Corp., 522 N.W. 2d 808, 813 (Iowa 1994); Whitten v. Kentucky Fried Chicken Corp., 570 N.E.2d 1353, 1356–7 (Ind. Ct. App. 1991); Wise v. Kentucky Fried Chicken Corp., 555 F. Supp. 991, 995 (D.N.H. 1983); Papastathis v. Beall, 723 P.2d 97, 100 (Az. 1986). These cases do not turn upon proof of an agency relationship between the franchisor and franchisee, but rather require proof that the franchisor controlled the selection of the product which caused the injury or mandated a means or method which caused the injury.

5

In Allen v. Choice Hotels, International, Inc., the Fourth Circuit, applying South Carolina law, recognized that a franchisor may have potential liability for injuries to business invitees if the franchisor exercised sufficient control over that part of the franchisee's operations which proximately caused the injury. 276 Fed. Appx. 339, 342 (4th Cir. 2008). Allen involved wrongful death and personal injury claims of six patrons following a fire at a hotel. Plaintiffs filed suit against the hotel franchisor alleging that it was liable for failing to require the franchisee to retrofit the hotel with sprinklers. The court found that the franchisor had not breached any independent legal duty it owed to the hotel patrons and noted that "[l]ike the vicarious liability analysis, the '[d]irect liability cases look to the franchisor's actual control or retained right of control to determine the presence of a duty for purposes of evaluating whether the franchisor was itself negligent.'" Id. at 343, n. 4 (citing Kerl v. Dennis Rasmussen, Inc., 273 Wis. 2d 106, 682, 682 N.W.2d at 334 n. 3 (Wis. 2004)). The court found no direct liability against the franchisor, stating "[the franchisor] did not participate in the selection of fire or safety equipment installed at the hotel, and that [the franchisee] did not need [the franchisor's] approval to make any changes to safety and security systems at the hotel; nor did [the franchisor] have a role in [the franchisee's] decision regarding whether or not to install fire sprinklers." Id. at 343.

Conversely, in Wise v. Kentucky Fried Chicken Corp., 555 F. Supp. 991 (D.N.H. 1983), plaintiff asserted that defendant Kentucky Fried Chicken ("KFC") was directly liable for negligence when plaintiff was injured by a pressure fryer while employed by a KFC franchisee. Plaintiff alleged that the franchisee purchased the fryer from KFC's approved supplier list, and that KFC knew that the fryer was defective and failed to warn its franchisees of the defects. The court held that KFC could be held liable because it: 1) retained some control over the selection of the fryer, and 2) voluntarily undertook to recommend the specific fryer to its franchisee. The

6

court also found that KFC had a duty to warn where "the instrumentality alleged to have caused the injury in this case is one purchased with the approval, if not at the direction, of [KFC]," and KFC had knowledge that the instrumentality was dangerous and did not take steps to remedy the situation. Id. at 995–96.

Likewise in Whitten v. Kentucky Fried Chicken Corp., 570 N.E.2d 1353, 1356–57 (Ind. Ct. App. 1991), the court found that defendant KFC could be held directly liable to its franchisee's employee where KFC recommended and/or selected specific equipment for the franchisee that injured an employee. Similarly, in Papastathis v. Beall, 723 P.2d 97, 100 (Az. 1986), the court held that a franchisor who voluntarily undertook the service of inspecting, endorsing and recommending a soft drink rack for its franchisee's store, could be held directly liable to an invitee of the franchisee when the invitee was injured by a soda falling out of the rack. But see Hoffnagle v. McDonald's Corp., 522 N.W. 2d 808 (Iowa 1994) (Franchisor did not retain sufficient control over the operations of its franchisee's restaurant to owe a duty of security to the franchisee's employees).

These cases recognize that an invitee may assert a direct claim of negligence against a franchisor, regardless of an agency relationship, where the franchisor retained control over or voluntarily undertook to recommend, inspect, etc., an instrumentality or design for the franchisee that caused the invitee's injury. The amount of control sufficient to impose liability "'must consist of something more than a general right to make suggestions or recommendations or to order the work stopped or resumed.'" Whitten, 570 N.E. 2d at 1356 (quoting Coty v. U.S. Slicing Mach. Co., Inc., 373 N.E.2d 1371, 1375 (Ill. App. Ct. 2005).

Here, Plunkett alleges that MBUSA insisted upon the specific design feature of Crossroads' premises—the high-gloss floor paint—that caused Plunkett's injury. Specifically,

7

Plunkett alleges that "MBUSA…required the floor of dealerships selling its products, including Crossroads to be painted in a high-gloss paint, rendering liquid on the floor exceptionally difficult for invitees to detect." Compl. at ¶ 8. Plunkett further alleges that MBUSA failed to correct the hazard posed by the high-gloss floor paint even though it knew or should have known that the floor paint created a dangerous condition and that other invitees had previously fallen due to that condition. Plunkett's allegations are sufficient at this stage in the proceedings to assert a claim against MBUSA for requiring that Crossroads use the high-gloss floor paint and creating a greater risk of injury to invitees such as Plunkett. As in Wise, Whitten, and Papastathis, Plunkett alleges that MBUSA affirmatively controlled the selection of the particular paint to be used on Crossroads' floor. At this stage of the proceedings, these allegations are sufficient to state a cause of action for negligence that MBUSA breached a duty of care owed to the invitees of its franchisee. Accordingly, I find that the complaint contains adequate facts at this early stage of the proceedings to state a plausible claim of direct liability against MBUSA.

**B. Proximate Cause**

MBUSA also argues that it should be dismissed from this action because any negligence on its part in selecting the high-gloss floor paint is superseded by the intervening cause of Crossroads' negligence in allowing water to be present on the floor. There may be more than one proximate cause of an event, and a subsequent proximate cause may or may not relieve a defendant of liability for his negligence. Williams v. Le, 276 Va. 161, 167 (Va. 2008). "In order to relieve a defendant of liability for his negligent act, the negligence intervening between the defendant's negligent act and the injury must so entirely supersede the operation of the defendant's negligence that it alone, without any contributing negligence by the defendant in the slightest degree, causes the injury." Id.

Here, the complaint alleges negligence against MBUSA for selecting a hazardous floor paint and for failing to protect invitees from the hazard of a wet floor. Plaintiff claims that MBUSA's selection of the flooring was a contributing, concurrent cause to her injury, because the "high-gloss paint, render[ed] liquid on the floor exceptionally difficult for invitees to detect." Compl. at ¶ 8. The court cannot say as a matter of law at this stage of the case that any negligence by MBUSA was entirely superseded by any negligence of Crossroads.

### III. CONCLUSION

For the foregoing reasons, the court will, by separate order **GRANT** in part and **DENY** in part Defendant MBUSA's Motion to Dismiss (Dkt. No. 7), and allow plaintiff's claim of direct liability to proceed against MBUSA. Further, pursuant to Plunkett's request during oral argument, the court will **GRANT** Plunkett leave to amend the complaint to assert an agency theory, if applicable, and permit Plunkett to amend her pleadings within ten (10) days of the date of this order.

Enter: January 7, 2015

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge